IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN ARIC MARSH,                     )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )        No. 5:23-cv-05064-TLB
                                       )
                                       )
CHRISTOPHER WRAY,                      )
DIRECTOR, FEDERAL BUREAU OF            )
INVESTIGATION, on behalf of the        )
UNITED STATES of AMERICA,              )
                                       )
                    Defendant.         )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

Plaintiff Justin A. Marsh (Plaintiff) alleges that FBI Director Christopher Wray, in his official capacity as Director of the Federal Bureau of Investigation (Defendant), through the Federal Bureau of Investigation's (FBI) National Instant Criminal Background Check System (NICS or System) improperly denied Plaintiff's prior attempted firearm transfer. Defendant, by and through his undersigned attorneys, submits, pursuant to Federal Rules of Civil Procedure 12(b) and 56, the following "Memorandum in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment, With Defendant's Cross-Motion for Summary Judgment or, in the alternative, Motion to Dismiss" due to this Court no longer having subject matter jurisdiction of this matter.

1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges the disposition of (and subsequent State-level judicial action on) his prior felony criminal history has been remedied under Arkansas state law such that it should not prohibit him from being able to receive or possess firearms under Federal law.  More specifically, Plaintiff claims the issue centers on "the Arkansas First Offender Act of 1975, aka Act 346"[1] and how Arkansas courts that commonly "used the wrong court form to seal their criminal history." Complaint ¶ 3.  Plaintiff's Complaint alleges those incorrect forms stated that he and others had been convicted, but that these individuals "later had the judge sign the correct form that found the individuals had not been previously convicted, then had their charges dismissed following successful completion of probation." *Id.*

Plaintiff's Complaint sought "relief pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201 - 2202, and 2412, and 5 U.S.C. § 702."  Plaintiff states jurisdiction "is founded on 28 U.S.C 1331 in that this action arises under the Constitution and laws of the United States[]" and that "this Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412 and 18 U.S.C. §925a [sic]."[2] The Complaint, much further within, states "18 U.S.C.A. § 925A [provides] a remedy for erroneous denial of firearm purchases."

With regard to relief sought, the Complaint appears to seek a declaration that Plaintiff[3], and all persons "who have successfully availed themselves to the same First Offender Act in the same way as the [Plaintiff]," are not prohibited persons under 18 U.S.C. § 922.  The Complaint also seeks, among other things, an injunction that would prohibit 18 U.S.C. § 922 from being

---

[1] Arkansas Code Annotated (A.C.A.) § 16-93-301 et seq.

[2] Although the Complaint references "18 U.S.C. § 925a," Defendant understands this to be a reference to "18 U.S.C. § 925A" entitled "Remedy for Erroneous Denial of Firearm." See *also* ¶ 10; *but cf.* ¶ 33.

[3] In several places, the Complaint's Prayer for Relief requests relief for or pertaining to "Defendant." See Complaint, "Prayer for Relief" ¶¶ (a) - (b).  It appears that, in these instances, the Complaint intended to reference "Plaintiff" rather than "Defendant."

enforced against Plaintiff "merely because of the facts arising from Plaintiff's prior criminal proceedings." Complaint, pg. 6 (Prayer for Relief ¶ (c)).

Defendant disputes Plaintiff's arguments and asserts that Defendant is entitled to summary judgment because the undisputed material facts make clear that Defendant has voluntarily provided Plaintiff the remedies under 18 U.S.C. § 925A without court order. Accordingly, this factual development means Plaintiff's requests, as to Plaintiff himself, are moot and as such, this Court lacks subject matter jurisdiction to continue hearing this matter. Additionally, the Plaintiff does not have the ability to raise similar claims for other unknown/unspecified persons. Accordingly, Defendant is entitled to dismissal and/or judgment as a matter of law. See Fed. R. Civ. P. 12(b), 56(a), respectively. Should the Court rule against this Motion, Defendant would request further opportunity to more fully brief the inaccuracies of Plaintiff's filings thus far.

## II.    FACTUAL ALLEGATIONS OF PLAINTIFF

As provided via Plaintiff's Complaint, the Exhibits attached thereto, and matters to which the Court may further consider here, Defendant understands the alleged material facts to be as follows:

On August 16, 2007, Plaintiff appeared before the Benton County, Arkansas, Circuit Court and entered a plea of guilty to violation of a misdemeanor offense for "hot check" (see Complaint, ¶ 13 and Exhibit B) and a plea of nolo no contest [nolo contendere] to a class C felony (*Id.*, ¶ 13 and Exhibit A) for "Failure to Appear" (A.C.A. § 5-54-120). Since 1983, a class "C" felony offense in Arkansas has been punishable by a term of imprisonment for a term of more than one year. A.C.A. § 5-4-401(a)(4) (providing class C felony is punishable by a term of imprisonment of three (3) to ten (10) years).

An "Order to Seal" (see Complaint, Exhibit B) entered/filed on September 16, 2011, recited that Plaintiff "was found" guilty of those offenses on August 16, 2007.[4] "Section A" of that document was completed, via checking the box immediately preceding the term "Guilty" and a description of the offenses "Viol Hot Check + FTA [Failure to Appear]", Arkansas statutory citations (A.C.A. § 5-37-302 and 5-54-120), along with a notation that Plaintiff was sentenced to probation for 48 months (see also Complaint ¶ 13).[5] Section A of Exhibit B also reflects Plaintiff being "sentenced under the provisions of A.C.A. § 16-93-301 which provides for the sealing of [Plaintiff's] record."

Plaintiff's Complaint also alleges that, on March 2, 2021, the Benton County Circuit Court entered an "Order to Dismiss and Seal First Offenders . . ." (*Id.*, ¶ 17, Exhibit A[6]). That 2021 Order states, among other things, that: on August 16, 2007, Plaintiff pled guilty or no contest to the class C felony offense of Failure to Appear; and "[w]ith [Plaintiff's] consent and without entering a judgment of guilt, the Court deferred further proceedings and placed [Plaintiff] on probation for a period of 4 year(s) but not less than one (1) year." *Id.* The court ordered that Plaintiff's "Petition . . . to Dismiss and Seal the above referenced convictions(s) pursuant to A.C.A. § 16-93-301, et seq and ACT 1460 OF 2013 A.C.A. § 16-90-1401, et. seq. should be and hereby is GRANTED." Complaint, Exhibit A.

Utilizing the NICS Transaction Number (NTN) "102HHHMF7" Plaintiff included with Exhibit C, Plaintiff's biographic information was submitted to NICS for a background check and

---

[4] Exhibit A to the Complaint is a "Order to Dismiss and Seal . . ." dated March 3, 2021, and Exhibit B to the Complaint is an "Order to Seal" dated September 16, 2011 (both orders purport to be issued from an Arkansas Circuit Court). The Complaint miscites Exhibits A and B. Specifically, although ¶ 15 of the Complaint cites to Exhibit A, it appears that Plaintiff intended to cite Exhibit B. Similarly, although ¶ 17 of the Complaint cites to Exhibit B, it appears that Plaintiff intended to cite Exhibit A.

[5] Exhibit B, Section A also appears to reflect that Plaintiff's sentence included a fine, costs and work program ("work prg").

[6] As discussed in note 2, although ¶ 17 of the Complaint cites to Exhibit B, it appears that Plaintiff intended to cite Exhibit A.

the System provided NTN 102HHHMF7 which was denied by NICS.  Plaintiff thereafter submitted a "Firearm Related Challenge" as to the denial of NTN 102HHHMF7.  The FBI upheld the denial of NTN 102HHHMF7.  See *id*.

## III.    STANDARD OF REVIEW

### Rule 12(b)(1)

The applicable decisional standard when determining a Rule 12(b)(1) motion depends upon whether the movant makes a "facial" or a "factual" challenge to subject matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge, the movant argues that the allegations in the complaint are not sufficient to establish subject matter jurisdiction. *Id*. In such cases, the court must afford the plaintiff the same protections as he would be entitled to receive under Rule 12(b)(6), *id.*, *i.e.*, the court must accept all factual allegations in the complaint as true, draw all inferences in the plaintiffs favor, and grant the motion to dismiss only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); see also *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

In a factual challenge, the movant relies on materials outside of the pleadings to contest subject matter jurisdiction. *Roehning v. United States*, No. 22-CV-0823 (PJS/TNL), 2023 WL 2666468, at *2 (D. Minn. Mar. 28, 2023); *Osborn*, 918 F.2d at 729 n.6; see also *McClain v. American Economy Insurance Co.*, 424 F.3d 728, 734 (8th Cir. 2005).  See also *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013) (raising a factual challenge to the plaintiffs standing to sue). In such cases, the court may rely on matters beyond the pleadings without turning the 12(b)(1) motion into a Rule 56 summary judgment motion, and the nonmoving party does not

enjoy Rule 12(b)(6)' s safeguards. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Osborn*, 918 F.2d at 729 n.6.

<u>Summary Judgment</u>

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See *Enter. Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 25. See e.g. *Roach v. United States*, No. 1:17-CV-04562-ELR, 2019 WL 2084409 (N.D. Ga. Feb. 8, 2019); *Humphrey v. U.S. Fed. Bureau of Investigations*, No. 3:22-CV-00193-SLG, 2024 WL 867253, at *6 (D. Alaska Feb. 29, 2024)

(granting motion for summary judgement in favor of FBI) vacating *Humphrey v. U.S. Fed. Bureau of Investigations*, No. 3:22-CV-00193-SLG, 2023 WL 8527090, at *3 (D. Alaska Dec. 8, 2023).

<u>Federal Firearms Law</u>

Under the Brady Handgun Violence Protection Act (Brady Act) (Pub. L. 103-159 (1993)), various provisions of the Gun Control Act of 1968 (codified at 18 U.S.C. § 921 et seq.) were amended to require nationwide background checks of certain firearm transfers. Declaration of NICS Record Custodian Barker ("Decl."), ¶ 2. See 18 U.S.C. § 922(t) (effective November 30, 1998); 34 U.S.C. § 40901 (previously 18 U.S.C. § 922, Notes). Specifically, before a federal firearm licensee (FFL or licensee)[7] may transfer a firearm to a person not licensed under 18 U.S.C. § 923, the FFL must contact the NICS for a background check to determine if available information demonstrates the prospective transferee is prohibited under Federal or State law from shipping, transporting, possessing, or receiving a firearm. Decl. ¶ 2. See also 18 U.S.C. § 922(t)(1). The FBI's NICS Section and, where applicable, qualifying "points of contact" (POC) jurisdictions are contacted by FFLs. Decl. ¶ 3. See Title 28, Code of Federal Regulations (CFR), § 25.1 – 25.11. A NICS background check queries the National Crime Information Center (NCIC), Interstate Identification Index (III), and the NICS Indices – all of which are available to authorized federal, state, local and tribal agencies. Decl. ¶ 4; 28 CFR 25.4, 25.6(c). Relevant to NICS, NCIC is searched for active warrants, protection orders, etc. which may prohibit the transfer; III is searched for available, potentially prohibiting criminal history records of the transferee; and the NICS Indices is a database of persons where the entering agency has determined the subject is prohibited from receiving or possessing firearms under Federal or State law. Further investigation and

---

[7] FFLs are licensed under the provisions of 18 U.S.C. § 923. See also 34 U.S.C. § 40901.

research is conducted when necessary to establish or rule out applicable firearm prohibitions. Decl. ¶ 9.

Contrary to Plaintiff's filings thus far, relevant here was 18 U.S.C. 922(t) and its inclusion of firearm prohibitions imposed under _State_ law, specifically at issue was Arkansas Code Annotated (A.C.A.) § 5-73-103.

## IV.    ARGUMENT

First, to the extent Plaintiff argues that the underlying issues in the case are 'so well settled' under Arkansas State law, he is simply incorrect. Arkansas court and Attorney General Opinions are not "well settled" upon the full impact that 1995 Act 595  amendments to A.C.A. 5-73-103 had under Arkansas' State-imposed firearm prohibitions; but it is fair to say that even those who have looked at that the issue (or similar question of law), would lean toward 1995 Act 595 would have applied to persons like Plaintiff and that Act 595 would control over the later enacted 1995 Act 1325; or they would at least concluded Act 595 controlled Act 1325 to the extent the two are not in direct conflict (i.e., the appropriate level of offense that a violation A.C.A. 5-73-103 carries).

> The "felon in possession" statute, however, was amended by two separate, arguably conflicting acts of the 1995 General Assembly, Act 595 of 1995 and Act 1325 of 1995. . . .The sole change in previous law made by Act 1325 of 1995 concerned the penalty for a felon (any felon), possessing a firearm. . . . The only change Act 1325 made to the law was to add an exception noting that in some cases, the 'felon in possession' charge would not be a Class 'B' felony, but would remain a Class 'D' felony. . . . Act 1325, however, despite the lack of focus on this issue, did restate the entire felon in possession statute, including the provisions of former law relevant to when a conviction is a conviction for purposes of that statute. . . . Act 1325. . .technically became law after Act 595, which was enacted specifically to provide that expunged felony convictions may be used as an underlying felony to support a felon in possession charge. _**Act 1325 became a law without the Governor's signature, presumably on April 14, 1995. See Publisher's notes to A.C.A. § 5-73-103 (Supp. 1995). Act 595, . . . contained an emergency clause which made it effective immediately upon the Governor's signature on March 13, 1995. . . . In the absence of any controlling court decision, however, it is my opinion that a court faced with the issue would in all likelihood hold that Act 595 is valid, has not been repealed by**_

*implication by Act 1325, and operates to render persons with expunged felony convictions ineligible to carry firearms, unless pardoned or granted restoration of rights.*

Ark. AG Op. 96-247, at 1—3 (September 4, 1996).[8]

Plaintiff appears to erroneously believe he is eligible for his criminal history to be treated under the 2013 amendments to the General Assembly passed under Act 1460 (also known as the Comprehensive Criminal Record Sealing Act of 2013) even though the resolution of his criminal history occurred well before that 2013 legislative update. See *Bolin v. State*, 459 S.W.3d 788, 791, 2015 Ark. 149, 4–5, (2015). *Cf.* Complaint, ¶ 16, and Complaint Exhibit A pg. 3 (citing Act 1460 of 2013).

<u>Plaintiff Lacks Standing to Seek Relief on Behalf of Third-Parties.</u>

The relief sought in the Complaint includes a request for a declaratory judgment that Plaintiff, and all persons "who have successfully availed themselves to the same First Offender Act in the same way as the [Plaintiff]," are not prohibited persons under 18 U.S.C. § 922. For the reasons discussed above, Plaintiff's claims fail as a matter of law, and this suit should be dismissed in its entirety. Further, Plaintiff lacks standing to assert relief on behalf of third-parties, and his above-referenced request for a declaratory judgment on behalf of third-parties fails for this additional, independent reason.

"Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 991-92 (8th Cir. 2016) (citing U.S.

---

[8] "Section 1–2–207 provides that when identical acts are enacted by the General Assembly during the same session, that the act signed last shall be deemed to have repealed the earlier enactment. However, when more than one act concerning the same subject matter is enacted during the same session, whether or not specially amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The statutory construction of these sections will be necessary to address the issue dependency neglect regarding the two brothers in this case." *Battishill v. Arkansas Dep't of Hum. Servs.*, 82 S.W.3d 178, 183, 78 Ark. App. 68, 78 (2002) (emphasis added).

Const. art. III, § 2).  To invoke the court's jurisdiction to decide a case, a plaintiff must have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).  This requires a plaintiff to establish – "to the manner and degree of evidence required" at each successive stage of litigation - an "injury-in-fact," 2) "a causal connection between the injury and the conduct complained of," and 3) that the Court is likely able to redress the plaintiff's injury. *Id*. at 560-61; *Hughes*, 840 F.3d at 992 (citing *Lujan*, 504 U.S. at 560)).  "The party invoking federal jurisdiction has the burden to establish these elements."  *Hughes*, 840 F.3d at 992 (internal citations omitted).

In his referenced request for a declaratory judgment, Plaintiff attempts to assert third-party standing on behalf of others who have allegedly availed themselves of the First Offender Act in a manner similar to Plaintiff.  Regarding third-party standing, the Eighth Circuit has stated as follows: "'[T]here may be circumstances where it is necessary to grant a third-party standing to assert the rights of another.' *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 . . . (2004). For example, a plaintiff may show 'a close relationship with the person who possesses the right' and 'a hindrance to the possessor's ability to protect [her] own interests.' Id. at 130."  *Hughes*, 840 F.3d at 992 (rejecting plaintiff-husband's attempt to assert third-party standing on behalf of his wife); *Joe Hand Promotions, Inc. v. Cusi*, CASE NO. 3:13-cv-935-MMA-BLM, 2013 U.S. Dist. LEXIS 107730, at *7 (S.D. Cal. July 31, 2013) (holding that the Complainants "cannot allege injury as a general grievance or on behalf of third parties.  Thus, to the extent that [Complainants] request declaratory relief 'on behalf of similarly situated people in the public,' the Court declines to grant jurisdiction.").

Here, Plaintiff cannot, and does not, allege that he has a "close relationship" with the third-parties whose rights he seeks to vindicate or that these purported third-parties are hindered in their ability to protect their own interests.  Thus, to the extent Plaintiff seeks declaratory relief on behalf

of third-parties, he lacks standing to do so, and his request for such relief should be dismissed for lack of subject matter jurisdiction. See *Hughes*, 840 F.3d at 987; *Joe Hand*, 2013 U.S. Dist. LEXIS 107730, at *7; see *also Johnson v. Baldwin*, No. 4:09-cv-00271-JEG, 2010 U.S. Dist. LEXIS 150287, at *8 (S.D. Iowa Oct. 26, 2010) ("Plaintiff requests relief on behalf of all future inmates who might encounter this situation. This case, however, is not brought as a class action, and [Plaintiff] has no standing to bring it on behalf of others similarly situated.").

Plaintiff's Complaint, to some extent, addresses relevant Arkansas statutes. The Complaint also provides some discussion of Arkansas court decisions and Attorney General Opinions which address those statutes. However, the Complaint fails to address the provision of Arkansas law which ultimately controls the analysis here – under Federal and State law.

<u>Plaintiff's Complaint Must be Dismissed for Failure to State a Claim</u>

In sum, the Complaint appears to challenge Defendant's actions as follows: (A) under Arkansas law, he was never "convicted" of the underlying felony offense and so Federal law cannot consider that offense under 18 U.S.C. § 922, and (B) even if that position is incorrect, because his felony record was sealed, Arkansas law no longer prohibits his firearm possession and, therefore, 18 U.S.C. § 921(a)(20) states Defendant cannot use that sealed Arkansas felony record to prohibit Plaintiff from receiving firearms under 18 U.S.C. § 922(g)(1). Plaintiff states he lost his firearm rights while under the terms of his "Act 346 probation" quoting "Ark. Op. Atty. Gen. No. 2008-013" which reiterated, in relevant part, "'[9](1) Application of any law prohibiting possession of a firearm by certain persons . . .'" A.C.A. § 16-90-901 (2007 Supp.)).[10] Again, with

---

[10] Arkansas AG Opinion 2008-013 interprets A.C.A. § 16-90-901 in light of the State Convicted Offender DNA Data Base Act (A.C.A. §§ 12-12-1101 et seq.), but that Opinion does not address A.C.A. § 5-73-103.

respect to A.C.A. § 5-73-103, entitled "Possession of firearms by certain persons," Plaintiff's

criminal history places him within the crosshairs of the Arkansas Legislature's 1995 amendment

of A.C.A. § 5-73-103 via 1995 Act 595.  See 1995 Ark. Acts, No. 595 (H.B. 1684), § 1.  Act 595

only amended of A.C.A. § 5-73-103(b) but, in relevant part and as amended by Act 595, A.C.A. §

5-73-103 provides as follows:

> (a)  Except as provided in subsection (d) of this section or unless authorized
> by and subject to conditions as prescribed by the Governor, or his designee, or
> the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury
> Department, or other bureau or office designated by the Treasury Department,
> no personal shall possess or own any firearm who has been:
>
> (1) Convicted of a felony; or
> (2) Adjudicated mentally ill; or
> (3) Committed involuntarily to any mental institution.
>
> (b) A determination by a jury or a court in circuit court that a person committed a
> felony shall constitute a conviction even though the person was placed on probation,
> received suspension of imposition or execution of sentence, had his conviction
> expunged pursuant to any act, or was entitled to have his conviction expunged
> pursuant to any act, *except that a person who pleads guilty or nolo contendere or
> is found guilty of a felony in circuit court may lawfully possess a firearm only if
> his right to do so is subsequently restored by the Governor pursuant to subsection
> (d)(1) or subsection (d)(2) of this section or is otherwise authorized pursuant to
> subsection (a) of this section.*
>
> *      *      *      *
>
> (d) The Governor shall have authority to restore the right of a convicted felon to own
> and posses a firearm:
> (1) by granting a pardon explicitly restoring the right of the person to possess a
> firearm; or
> (2) without granting a pardon, upon the recommendation of the chief law enforcement
> officer in the jurisdiction in which the person resides, so long as the underlying felony did
> not involve the use of weapon occurred more than three (3) years ago.

*Id.* (emphasis added.

Based on the Complaint's allegations, Plaintiff pled no contest [nolo contendere] to a class

C felony.  Thus, Plaintiff triggers A.C.A. § 5-73-103(b), which expressly provides "that a person

who pleads guilty or nolo contendere or is found guilty of a felony in circuit court may lawfully possess a firearm only if his right to do so is subsequently restored by the Governor pursuant to subsection (d)(1) or subsection (d)(2) of this section or is otherwise authorized pursuant to subsection (a) of this section." *Id.* Plaintiff cannot, and does not, allege that he is authorized to possess a firearm under A.C.A. § 5-73-103(a) or A.C.A. § 5-73-103(d)(1) or (d)(2). Thus, Plaintiff is prohibited from possessing a firearm under A.C.A. § 5-73-103(b), and his Complaint must be dismissed.

<u>Plaintiff Lacks Standing as the Plaintiff now has a UPIN and can purchase firearms</u>

Regardless of the history of this matter, Defendant's Declaration by a NICS Records Custodian states unequivocally, "[a] review of NICS records reveal a Voluntary Appeal File (VAF) application was received to the NICS Section in May of 2024 from Justin Aric Marsh. The VAF is an option for individuals to request that NICS retain their information. If approved, the individual is issued a Unique Personal Identification Number (UPIN). The individual can then use the UPIN for future NICS background checks and, provided no new background issues arise after the UPIN was issued, the UPIN will help prevent future extended delays or erroneous denials in their attempts to possess or receive a firearm. A letter was mailed on June 17, 2024, to Mr. Marsh informing him that his VAF application was approved. In addition, Mr. Marsh was provided a copy of his UPIN which can be utilized for future attempted firearm purchases. Since the issuance of the UPIN, there is no record of any attempted firearm purchases by Mr. Marsh." Decl. 11—12. Accordingly, Defendant has issued Plaintiff the relief he has requested and, provided he has no future prohibiting or potentially prohibiting events occur in his life (and he provides the UPIN during future NICS background checks), he will be approved for firearm

transfers. As a result, his claims are moot and this Court lacks subject matter jurisdiction to continue hearing in this matter.

Attorney's Fees

"[P]arties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001) Awards of attorney's fees are only available to "prevailing part[ies]." 18 U.S.C. § 925A. Even though Defendant's issuance of a UPIN was issued after this action was filed by Plaintiff, the "catalyst theory" does not result in a "prevailing party." "The Supreme Court firmly rejected the 'catalyst theory'—that is, the argument (made by *Roehning* in this case) that 'a plaintiff is a "prevailing party" if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.' *Buckhannon*, 532 U.S. at 601. In order to be a 'prevailing party,' the Court held, the plaintiff must be 'awarded some relief *by the court*.' Id. at 603 (emphasis added)." *Roehning v. United States*, No. 22-CV-0823 (PJS/TNL), 2023 WL 2666468, at *5 (D. Minn. Mar. 28, 2023).

See also *Bowen v. United States*, CIVIL ACTION NO: 6:19-cv-9, 2021 U.S. Dist. LEXIS 214630, at *12 n.5 (S.D. Ga. Nov. 5, 2021) ("The government's 'voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur'* to render Plaintiff a 'prevailing party.'") (citing *Buckhannon* 532 U.S. at 605). In the present case, Plaintiff's benefit from the government's voluntary change in conduct (creating a UPIN after Plaintiff's submission of a voluntary appeal), without Court intervention, would not constitute a victory for the purposes of defining a "prevailing party" under 18 U.S.C. § 925A. See *id.* Identical conclusions have also been found in a litany of other

challenges to NICS determinations that have voluntarily been changed after litigation has been filed but before "judicial *imprimatur*." "[I]t is clear that such a request in a complaint seeking relief under 18 U.S.C. § 925A, when the underlying case or controversy becomes moot through the voluntary actions of the Defendant, may be denied." *Melton v. United States*, No. 421CV00095GHDJMV, 2022 WL 2821540, at *2 (N.D. Miss. July 19, 2022) citing *McKay v. New York*, No. 16-CV-6834-FPG, 2018 WL 1046792, at *4 n.5 (W.D.N.Y. Feb. 26, 2018) and *Perron v. Fed. Bureau of Investigation*, No. C17-215 RAJ, 2018 WL 835713, at *3 (W.D. Wash. Feb. 13, 2018).

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By:      /s/ Seth T. Creed

Seth T. Creed
Assistant U.S. Attorney
Bar No. 2010176
414 Parker Avenue
Fort Smith, AR  72901
Phone: (479) 249-9045
Email: seth.creed@usdoj.gov

## CERTIFICATE OF SERVICE

I, Seth T. Creed, Assistant U.S. Attorney for the Western District of Arkansas, hereby certify that on July 22, 2024, the foregoing has been filed with the Clerk of the Court using the CM/ECF system which will send notifications to all parties of record.

/s/ *Seth T. Creed*

Seth T. Creed
Assistant United States Attorney